**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States, ) | No. CR 05-1127-PHX-MHM |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| Paul Richard Butts, ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

Presently pending before the Court is Defendant's Motion to Suppress Evidence From the Search of his residence and Derivative Evidence (Doc. 88) and Defendant's Motion to Determine the Voluntariness of and Suppress Defendant's Statement(s) (Doc. 87). The Court considers all papers submitted and, having heard oral argument, issues the following Order.

RELEVANT BACKGROUND

Defendant has been charged with knowingly promoting, presenting, distributing or soliciting, in interstate commerce, by any means, including a computer, material depicting child pornography, in violation of 18 USC §§ 2252A(a)(3) and 2256 (Count 1), and knowingly possessing a computer disk or other material, that is, hard drive, that contained an image of child pornography that had been mailed, shipped and transported in interstate

1  commerce, by any means, including a computer, in violation of 18 USC §§ 2252A(a)(5)(B)
2  and 2256 (Count 2).

3        According to the government, on or about August 10, 2005, Federal Bureau of
4  Investigations Special Agent Robin Andrews determined that the Defendant had child
5  pornography on his computer. Agent Andrews used the peer-to-peer file sharing software
6  "Limewire" to access Defendant's computer and to locate child pornography on Defendant's
7  computer and download a movie containing child pornography from Defendant's computer.
8  Then, Agent Andrews identified the Defendant through his Internet Protocol ("IP") address
9  and through a subpoena of Defendant's Internet Services Provider ("ISP"). Agent Andrews
10 then obtained a search warrant for the Defendant's residence and his computer.

11       On or about September 28, 2005, Agent Andrews presented a search warrant to United
12 States Magistrate Judge Edward C. Voss. The government asserts that Judge Voss asked
13 Agent Andrews when she expected to perform the search and Agent Andrews responded,
14 "next Thursday." Judge Voss signed the search warrant and filled in "October 5, 2005" as
15 the date for the search to take place. Additional search warrant language following the date
16 instructs "not to exceed 10 days." Def.'s & Govt.'s Exh. 1.

17       Sometime between 6:00 and 6:40 a.m. on October 6, 2005, agents executed the search
18 warrant. According to the Defendant, "a large contingent of agents . . . entered the house
19 with guns drawn pointing them at and assaulting the children," who were nine and thirteen
20 years old. "The agents then forced all occupants . . . out into the front yard." The agents
21 "were wearing jackets" whereby "[t]he defendant and his children were not provided such
22 comfort despite the cold morning."

23       While the search was being conducted, Defendant was taken to the front porch of his
24 house and directed to sit down. The agent advised Defendant that he was not under arrest
25 and that his statement was voluntary. Defendant was free to go and, in fact, did leave to take

26
27
28

his children to school.[1]  At first, Defendant denied knowledge of any child pornography existing on his computer.  Defendant later admitted that he saved child pornography to his hard drive and had over 200 image files.  Defendant stated that he had been saving such images for approximately a year.  Defendant stated that he used peer-to-peer file sharing programs to download child pornography files.

At approximately 8:10 a.m. Agent Andrews noticed the "October 5, 2005" date on the warrant.  Agent Andrews notified her supervisor as well as Assistant United States Attorney Sharon Sexton.  Ms. Sexton advised Agent Andrews to complete the search, but to notify Judge Voss and to author an investigative report regarding the matter.  The search of Defendant's home was completed at approximately 9:15 a.m. on October 6, 2005.

After completion of the search warrant and at the time of the search warrant return, Agent Andrews addressed the "October 5, 2005" date with Judge Voss and Agent Andrews completed an investigative report, which she provided to defense counsel on October 31, 2005.  (See Report at Govt.'s Exh. 2).

Agent Andrews wrote in her report and testified during the hearing that her mistake regarding the date could be best characterized as follows:  (1) in her practice and experience, most magistrate judge's authorize the full ten day time period within which to execute a search warrant and that she mistakenly assumed Judge Voss had authorized the full ten-day period; (2) she thought that she had appropriately communicated the day the search warrant would be executed, i.e., "next Thursday," and that Judge Voss intended to accommodate that planned schedule; and (3) she did not realize that Judge Voss assigned the date of October 5, 2005 as the date for expiration of the warrant until after the search had been nearly completed.

---

[1] Defendant returned to his house while the agents were still present.  The agents allowed Defendant to reenter the residence to prepare for a job interview Defendant had later that morning.

- 3 -

Agent Andrews also wrote in her report and testified at the hearing that the entire search of Defendant's residence were done in the same fashion and pursuant to the same policies and procedures as if the search were executed on October 5, 2005 and that her failure to execute the warrant on October 5, 2005 was a mistake and not an act of bad faith.

Defendant has filed a Motion to Suppress the Evidence from the Search and Derivative Evidence as well as a Motion to Determine the Voluntariness of and Suppress Defendant's Statement(s). The Court will discuss each in turn.

## DISCUSSION

I.  MOTION TO SUPPRESS EVIDENCE FROM SEARCH AND DERIVATIVE EVIDENCE

Defendant has moved to suppress the evidence obtained during the search of his residence as well as all derivative evidence thereof. This evidence includes computers, hard drives, loose media, and all analysis derived from the government's search and confiscation. Defendant states that the agents allowed him to skim the search warrant but they refused to show him the supporting affidavit that set forth the basis for the search and the items to be seized. Defendant argues that the warrant had expired and, therefore, the search was warrantless and conducted in violation of his Fourth Amendment rights.

Where a search warrant is inadvertently postdated by one day, "the search is within the scope of the warrant, notwithstanding the fact that the warrant is post-dated by one day, so long as the evidence in the record indicates that the only reason the search warrant was post-dated was the court's inadvertence." United States v. Hitchcock, 286 F.3d 1064, 1072 (9th Cir. 2002) (mandate previously withdrawn by 284 F.3d 1322 (9th Cir. 2002), amended and superseded by 298 F.3d 1021 (9th Cir. 2002)).

When an issuing magistrate judge makes "an error of a constitutional dimension" by failing to take the steps necessary to conform a search warrant to constitutional requirements after assuring police officers that such steps would be taken, it is reasonable for the officers to rely on the magistrate judge's assurances "that the warrant authorized the search they had

1  requested." Id. (citing Massachusetts v. Sheppard, 468 U.S. 981, 990 n. 6, 104 S.Ct. 3424,
2  82 L.Ed.2d 737 (1984)).

3  When evidence is seized pursuant to a defective search warrant, suppression under the
4  exclusionary rule is not automatic. The "prim[ary] purpose of the exclusionary rule is to deter
5  future unlawful police conduct and thereby effectuate the guarantee of the Fourth
6  Amendment against unreasonable searches and seizures." Illinois v. Krull, 480 U.S. 340,
7  347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (internal quotation marks omitted).

8  In the interest of deterrence, "evidence should be suppressed 'only if it can be said that
9  the law enforcement officer had knowledge, or may properly be charged with knowledge,
10  that the search was unconstitutional under the Fourth Amendment.'" Id. at 348-49 (quoting
11  United States v. Peltier, 422 U.S. 531, 542 (1975)); see also United States v. Leon, 468 U.S.
12  897, 918 (1984) ("[S]uppression of evidence obtained pursuant to a warrant should be
13  ordered only on a case-by-case basis and only in those unusual cases in which exclusion will
14  further the purposes of the exclusionary rule.").

15  By all accounts, the error of having the date on the search warrant post-dated by one
16  day appears to have been done inadvertently by the magistrate judge. The evidence indicates
17  that Agent Andrews had no knowledge of the incorrect date on the search warrant until the
18  search had been nearly completed, and that Agent Andrews exercised no bad faith in
19  executing the search warrant on October 6, 2005. Moreover, it was reasonable for Agent
20  Andrews to rely on the magistrate judge's willingness to issue the search warrant for the day
21  she requested. Moreover, the search was conducted within the 10 days allowed for a valid
22  search warrant.

23  Defendant claims that a prejudicial change occurred between the date on the search
24  warrant and the following day when the search warrant was executed, which was that there
25  was time for more evidence to accumulate. Defendant's argument is not compelling, as it
26  means that Defendant may have downloaded additional child pornography in the 24 hours
27  before the search was conducted.

28

- 5 -

Finally, Krull instructs that the exclusionary rule is restricted to instances that will advance its remedial purpose – to deter future unlawful police conduct. Here, Agent Andrews always intended to conduct the search on October 6, 2005. Before initiating the search, Agent Andrews did not have knowledge that the date on the search warrant was off by a day. Furthermore, there is no evidence of unlawful police conduct. Accordingly, Defendant's Motion to Suppress Evidence from Search and Derivative Evidence is denied.

II. MOTION TO DETERMINE VOLUNTARINESS OF AND TO SUPPRESS DEFENDANTS STATEMENT(S)

It is the government's burden to prove that a statement was voluntary by a preponderance of the evidence. United States v. Bautista, 362 F.3d 584, 589 (9th Cir. 2004). A statement is voluntary when it is the product of rational intellect and free will. United States v. Guerrero, 847 F.2d 1363 (9th Cir. 1988). In evaluating voluntariness, the test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne. Bautista, 362 F.3d at 589. In considering the totality of the circumstances, factors to consider include the presence of any police coercion, the length of the interrogation, its location and its continuity, whether the police advised the suspect of his rights, and whether there were any direct or implied promises of a benefit. Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003).

A confession that is the product of physical or psychological pressure may be deemed voluntary if it remains "'the product of a rational intellect and a free will.'" United States v. Banks, 282 F.3d 699, 706 (9th Cir. 2002) (quoting Medeiros v. Shimoda, 889 F.2d 819, 823 (9th Cir. 1989)), reversed on other grounds, 124 S.Ct. 521 (2003). In Banks, the Ninth Circuit found significant the defendant's demeanor during the questioning, whether he appeared to be under the influence, and whether the defendant was able to understand the circumstances, follow instructions and answer questions. Id.

- 6 -

1    Before conversing with Defendant about the alleged child pornography on his
2 computer, the government assured Defendant that he was not under arrest, that he was
3 speaking to the agents voluntarily, and that he was free to leave at any time. Defendant, in
4 fact, did leave to take his children to school and then he returned to his house while the
5 agents were still present.

6    Defendant, on the other hand, contends that his statement was not given voluntarily
7 and of a "rational intellect and a free will" because of the nature of the execution of the
8 search warrant. Defendant argues this is true for a number of reasons including the early
9 morning hour; the surprise and lack of preparedness Defendant felt; the level of noise
10 associated with the search; the fact that the agents had their weapons drawn, despite
11 Defendant's lack of history of violence; the fact that the three children in the house were
12 frightened; the fact that all occupants of the house, including the children, were forced
13 outside in the cold with no jackets nor adequate clothing; the "threat" the agent made that he
14 was not as nice as "her," possibly referring to Agent Andrews; and the promise that if
15 Defendant answered their questions, things would go much easier for him.

16    Despite Defendant's contentions, the evidence indicates that Defendant's confession
17 was the product of rational intellect and free will. The agents testified during the hearing that
18 they were aware that children may be present in the house and they performed a "soft entry,"
19 which is a less aggressive way of entering and executing a search warrant. The agents also
20 testified that the October morning was not particularly cold. Defendant presented no
21 evidence to contradict the agents' assertions. During Defendant's confession, there were
22 only two law enforcement officers present; the agent advised Defendant that he was not
23 under arrest, that his statement was voluntary, and that Defendant was free to go at any time;
24 the conversation was not considerable in length; and Defendant ended the conversation so
25 he could drive his children to school.

26 ///
27 ///
28

1  The "threat" Defendant claims the officer asserted appear to be merely a comment that the officer was not going to be as easy-going as another had been. The alleged comment did not hold any threat of punishment or violence. Regarding the "promise" Defendant asserts was extended, a promise to recommend leniency is insufficient to establish the involuntariness of a statement. United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir. 1988). A promise only vitiates consent if it is "sufficiently compelling to overbear the suspect's will in light of all attendant circumstances." Id. at 1366. There is no evidence that the officer's comment overbore Defendant's will. Merely stating that things would go easier for Defendant if he talked with the officers is insufficient to invalidate the confession.

In considering the totality of the circumstances, including the lack of any police coercion, the length of the interrogation, its location and its continuity, whether the police advised the suspect of his rights, and whether there were any direct or implied promises of a benefit, there is no evidence to support that the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne. The government has met its burden to prove by a preponderance of the evidence that Defendant's statement was voluntary. Accordingly, Defendant's Motion to Determine Voluntariness of and to Suppress Defendants Statement(s) is denied.

CONCLUSION

For the foregoing reasons,

IT IS ORDERED that Defendant's Motion to Suppress Evidence From the Search and Derivative Evidence (Doc. 88) is denied.

IT IS FURTHER ORDERED that Defendant's Motion to Determine the Voluntariness of and Suppress Defendant's Statement(s) (Doc. 87) is denied.

DATED this 17th day of July, 2007.

Mary H. Murguia
United States District Judge